**Wayne Truman CONN, Petitioner,**

v.

**Ray H. PAGE, Warden, Oklahoma State Penitentiary, and State of Oklahoma, Respondents.**

**No. A–15484.**

Court of Criminal Appeals of Oklahoma.

Oct. 29, 1969.

Wayne Truman Conn, Pro Se.

G. T. Blankenship, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for respondents.

PER CURIAM.

This is an original proceeding in which Wayne Truman Conn has petitioned this Court for a Writ of Habeas Corpus seeking release from the State Penitentiary where he is confined by authority of judgment and sentence imposed in the District Court of Tulsa County, Oklahoma, Case No. 22702, sentencing him to five years imprisonment for the crime of robbery with firearms. It is petitioner's contention that he is illegally confined because he was denied an impartial hearing upon revocation of his parole, resulting in his return to the penitentiary with a loss of over a year's "good time" credit as a deduction from his term of imprisonment.

■ It appears that the petitioner was sentenced on July 27, 1967, and received at the penitentiary on August 5, 1967. He was paroled on December 24, 1968, but on April 16, 1969, his parole was revoked and he was returned to the penitentiary on May 19, 1969. From a review of these dates, it is apparent that the petitioner has been denied no right regarding a hearing on revocation of his parole. In Chase v. Page, Okl.Cr., 456 P.2d 590 (1969), this Court held that the full panoply of due process rights is not applicable to a parole revocation, although before revocation a parolee is entitled to an administrative hearing on whether the conditions of the parole have, in fact, been violated. However, the *Chase* case specifically held that this right to an administrative hearing applied to revocations after the announcement of that decision on June 18, 1969. Since petitioner's parole was revoked on April 16, 1969, and he was returned to the penitentiary on May 19, 1969, prior to the announcement of the *Chase* decision, he is not entitled to an administrative hearing on the revocation of his parole. We therefore conclude that the petitioner was not illegally returned to the penitentiary

to serve the remaining balance of his sentence upon revocation of his parole.

■ Petitioner also contends that upon his return to the penitentiary all his good time and blood time credits have been denied because he was returned as a parole violator. The statute providing for credits as deductions from a term of imprisonment for good behavior, work time, blood donations and jail time, Section 138 of Title 57, prior to 1968, provided in part as follows:

"Inmates on parole who are returned to the institution as parole violators shall retain the credits earned up to the date of their release on parole."

The legislature in 1968 amended Section 138 in this regard to read as follows:

"Inmates on parole who are returned to the institution as parole violators shall be deprived of any credits earned up to the date of their release on parole."

This amendment to Section 138 became effective on August 2, 1968.

Thus, before August 2, 1968, it was the rule of this Court as announced in In Re Salisbury, Okl.Cr., 369 P.2d 476 (1962), that:

"A parolee whose parole has been revoked does not lose his credits for good behavior, etc., earned before the parole, but is entitled to all the lawful credits earned up to the date he was released on parole."

Such was the holding of this Court even in view of 57 O.S.1961, § 332.14, which provides:

"Upon the revocation by the Governor of a parole, the same shall automatically cancel all accumulated credits for work and good behavior and the same shall not thereafter be restored except by recommendation of the Classification Committee and written order of the Warden of the penal institution where the former parolee is incarcerated."

In Ex parte Ridley, 3 Okl.Cr. 350, 106 P. 549, 26 L.R.A.,N.S., 110 (1910), this Court held that the Governor, upon revo-

cation of a parole, could not remove credits for good behavior allowed by statute and accumulated prior to an inmate's release on parole. In holding that the Governor could not interfere with the operation of the statute providing for credits for good behavior of penitentiary inmates, this Court stated:

"We are of opinion, upon an examination of the authorities and upon principle, that an act of the Legislature specifically defining credits for good behavior, in existence at the date of the judgment against the prisoner, becomes a part of the sentence and inheres into the punishment assessed, and is not an invasion of the constitutional prerogative of the Governor." 106 P., at 555.

More recently, in the case of Maghe v. State, Okl.Cr., 429 P.2d 535 (1967), this Court held in the fourth paragraph of its syllabus:

"Generally, any law passed after commission of an offense for which party is being tried is an 'ex post facto law,' when it inflicts a greater punishment than the law annexed to the crime at time it was committed, or alters situation of accused to . his disadvantage." 429 P.2d, at 536.

Accordingly, it appears the inescapable conclusion that the 1968 amendment to Section 138, providing removal of any credits earned up to the date of a release when a parole violator is returned to the penitentiary, "alters the situation of accused to his disadvantage." Since petitioner was sentenced on July 27, 1967, before the effective date of the amendment on August 2, 1968, the amendment has no application in calculating his sentence. Thus, petitioner's sentence must be calculated under Section 138 as it read at the time that his judgment and sentence was imposed, which allows retention of credits earned up to the date of release on parole for a parole violator.

■ Although the *Ridley* case indicates that the statute defining credits for good behavior becomes a part of the judgment and sentence, we think the better rule was acknowledged in Maghe v. State, supra, which holds that any law passed after the commission of the offense cannot inflict a greater punishment than the law annexed to the crime at the time it was committed. We therefore hold that the amendment to Section 138 of Title 57, depriving parole violators of any credits earned up to the date of their release on parole, is applicable only to those inmates whose offense was committed after August 2, 1968. All parole violators whose offense was committed prior to August 2, 1968, shall retain the credits earned up to the date of their release on parole.

With regard to the instant case, we find that the petitioner is entitled to all credits earned up to December 24, 1968, the date of his release on parole. However, even granting as a deduction from his term of imprisonment credits earned prior to his release on parole, the petitioner would not be entitled to immediate release. Therefore, the Writ of Habeas Corpus must be denied.

This application was referred to Court Referee, Mr. Penn Lerblance, and his findings and conclusions of law set forth herein, after careful consideration, have been adopted by the Court.