**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD GENE RICHARDSON,

Petitioner - Appellant,

v.

TRACY McCOLLUM, Warden, OSR,

Respondent - Appellee.

No. 15-6055
(D.C. No. 5:15-CV-00185-W)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.

Donald Richardson, an Oklahoma state prisoner proceeding pro se,[1] appeals the

district court's denial of his 28 U.S.C. § 2241 habeas petition and its determination that

the Oklahoma Department of Corrections (the ODOC) did not violate the Ex Post Facto

Clause of the United States Constitution when it applied a regulation adopted in 1997 to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Richardson appears pro se, we liberally construe his filings. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008); *Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002). But "this rule of liberal construction stops . . . at the point at which we begin to serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

determine Mr. Richardson's class level for purposes of calculating the amount of class level credits that could be applied against his sentence. According to Mr. Richardson, the 1997 amendments impermissibly relied on a 1975 escape charge to prevent him from attaining class 3 or 4 status and thereby qualifying for the higher class-level credits available at those levels. For the reasons explained below, we deny relief.

## I. BACKGROUND

Mr. Richardson has a significant criminal history, involving both state and federal offenses. In 1975, while in the custody of the ODOC, the State of Oklahoma charged him with escape from a penal institution. Although the escape charge remained on Mr. Richardson's prison record, he claims a district court in Atoka County, Oklahoma, dismissed the related criminal charges in 1984 for failure to prosecute.

In approximately 1976, Mr. Richardson was convicted of further state and federal crimes. He began serving his federal sentence at that time, with the state sentence ordered to commence thereafter. In 2012, after serving over 36 years in federal custody, Mr. Richardson was transferred to the ODOC's custody to serve his state sentence.

### A. Oklahoma Class Level Credit Procedures

Under Oklahoma's current statutory scheme, the ODOC assigns each inmate a class level which governs the amount of class-level credits available to reduce the inmate's period of incarceration. *See* Okla. Stat. tit. 57, § 138(A) (providing that the number of credits an inmate can receive against his term of imprisonment is based on his classification in one of four class levels). The number of credits available increases as an inmate's class level rises. For example, an inmate classified at a level 1 is entitled to no

2

credits and a level 2 inmate is eligible to receive 22 class-level credits per month;

whereas an inmate classified at a level 3 or 4 can receive up to 33 and 44 class-level

credits per month, respectively. *Id.* § 138(D)(2)(a). Each earned credit is equal to one day

of incarceration for purposes of calculating the days served. *Id.* § 138(A); *Smith v. Scott*,

223 F.3d 1191, 1193 (10th Cir. 2000).

The ODOC has promulgated regulations to implement this classification system.

In 1997, it amended one such regulation to provide that inmates with active escape points

are ineligible to reach a level 3 or 4 classification until those points expire (the 1997

Amendment). *See Smith*, 223 F.3d at 1194 (citing OP-060213(III)(C)(2) (1997)). Under

the ODOC's policy in place at the time Mr. Richardson returned to the ODOC's custody,

an inmate with active escape points was ineligible to advance beyond a level 2

classification for a five-year period. OP-060107(I)(B)(2)(c) (2013). Relying on

Mr. Richardson's 1975 escape, the ODOC deemed him ineligible for a level 3 or 4

classification.

In contrast, at the time of Mr. Richardson's crimes and his 1975 escape charge,

Oklahoma had not yet promulgated the classification system and the ODOC had not

adopted the current rule. *See State v. Wood*, 624 P.2d 555, 557 (Okla. Crim. App. 1981)

(recognizing that the statutory scheme in 1975 provided for mandatory pre-crediting for

work and good behavior as applied against the full term of a defendant's sentence, so

long as the inmate had "no infractions of the rules and regulations of the prison or the

laws of the State"). Thus, the regulation implements a substantive change that was not

3

foreseeable in 1975. *See Smith*, 223 F.3d at 1196 (holding that the regulation's use of escape points was a substantive amendment that was not foreseeable).

## B. Prior Proceedings on Mr. Richardson's Petition for Habeas Relief

Mr. Richardson filed a petition for relief under 28 U.S.C. § 2241 in the United States District Court for the Western District of Oklahoma, alleging his class level assignment violated the Ex Post Facto Clause because it was based on an escape that occurred, if at all, long before the adoption of the current statute and regulation. Proceeding without requesting a response from the Respondent, a United States Magistrate Judge considered Mr. Richardson's claims on the merits and recommended that the district court dismiss his petition. The magistrate judge reasoned that although the ODOC had amended its policy in 1997, it first applied the amended policy to Mr. Richardson when he was committed into state custody in 2012. Thus, the magistrate judge concluded Mr. Richardson had not established that the ODOC had retroactively applied the 1997 Amendment to him. Over Mr. Richardson's objection, the district court adopted the magistrate judge's Report and Recommendation and denied Mr. Richardson's habeas petition. The district court also denied Mr. Richardson a Certificate of Appealability (COA) and denied his motion to proceed in forma pauperis (IFP).

Mr. Richardson sought permission from this court to appeal the district court's denial of habeas relief. But to do so, Mr. Richardson had to first obtain a COA, which required him to make "a substantial showing of the denial of a constitutional right." [2] 28

---

[2] In his request for COA, Mr. Richardson also claimed the ODOC lacked evidence of the 1975 escape. But he expressly described "his single substantive argument" in

4

U.S.C. § 2253(c)(2); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (recognizing that issuance of a COA is a jurisdictional prerequisite); *Montez v. McKinna,* 208 F.3d 862, 867 (10th Cir. 2000) (holding "that a state prisoner must obtain a COA to appeal the denial of a habeas petition, whether such petition was filed pursuant to § 2254 or § 2241"). Thus, Mr. Richardson was required to demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that such jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 336. Although this is a demanding standard, Mr. Richardson's entitlement to a COA was not dependent upon a showing that his appeal would ultimately succeed. *Id.* at 337.

### C. Order Granting COA and Requesting Further Briefing

This court granted Mr. Richardson a COA because jurists of reason could disagree with the district court's analysis of his ex post facto claim. A law implicates the Ex Post Facto Clause when it is applied retroactively and disadvantages the petitioner by altering the definition of criminal conduct or increasing the punishment for a crime after the crime has been committed. *Smith*, 223 F.3d at 1194. Thus, the proper reference point for assessing whether a law has been retroactively applied is the time of the criminal activity.

---

support of his request for relief as the ODOC's "imposing its own administrative policies against its inmate population in violation of the ex post facto clause, and . . . this Court[']s Ruling in Smith [v]. Scott, 223 F.3d 1191, C.A. 10 Okla. (2000)." Any objection to the evidentiary support for the 1975 escape charge is therefore waived and we limit our analysis to the ex post facto implications of the ODOC policy. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("[I]ssues will be deemed waived if they are not adequately briefed."), *modified on rehr'g*, 319 F.3d 1207 (10th Cir. 2003).

5

*See, e.g.*, *Weaver v. Graham*, 450 U.S. 24, 31 (1981) (concluding that a law altering the availability of credits in prison was retrospective because it attached legal consequences to a crime committed before the law took effect); *Smith*, 223 F.3d at 1194–96 (holding that the ODOC committed an ex post facto violation when it applied the 1997 Amendment to revoke the credits an inmate had earned after a 1992 attempted escape, because the version of the ODOC policy in effect at the time of the escape did not provide fair notice of the limitation on an inmate's classification level).

In denying Mr. Richardson's petition, the district court adopted the magistrate's conclusion that "[b]ecause [Mr. Richardson] did not begin serving his sentence for the Oklahoma County Conviction until February 2012, [Mr. Richardson] has not shown that he would be entitled to receive earned credits under any version of an ODOC policy in effect prior to the date of his incarceration." Reasonable jurists could debate whether the district court was correct to apply the date Mr. Richardson was delivered to the ODOC's custody as the pertinent time for assessing retroactivity.

But even if the ODOC class-level credit policies were applied retroactively, Mr. Richardson could not establish an ex post facto violation without also showing he was disadvantaged as a result. Because the district court concluded Mr. Richardson had not been subjected to the retroactive application of law, it did not reach the issue of whether he was disadvantaged. And where the Warden was not notified of the proceedings in the district court, he had no opportunity to provide information concerning Mr. Richardson's earned credits. As a result, the record on appeal was inadequate to determine whether a retroactive application of the statute and rule governing class-level credits actually

6

disadvantaged Mr. Richardson. Yet, the error in the first step of the ex post facto analysis convinced us that Mr. Richardson had met his burden to be permitted to proceed further.

We therefore granted a COA on Mr. Richardson's ex post facto claim. We also directed the Warden to enter an appearance in this court and requested briefing from him on two issues: First, whether the magistrate judge and district court had correctly used the 2012 date when Mr. Richardson was admitted to the ODOC's custody as the reference for determining whether he had been subjected to a retroactive application of law. Second, whether Mr. Richardson had been disadvantaged by the application of the 1997 version of the classification scheme to him.

### D. Supplemental Briefing in this Court

The Warden filed a brief in response to our Order in which he declined to address whether the district court had correctly determined that the statute and rule were not retroactively applied to Mr. Richardson because they were in effect when he was remitted to the custody of the ODOC in 2012. Instead, the Warden argued resolution of that issue was unnecessary to resolve Mr. Richardson's ex post facto claim because he had not been disadvantaged. In support, the Warden explained that pursuant to current policy, the ODOC calculated Mr. Richardson's credits under both the system as it existed at the time of his conviction and under the current classification system and then awarded him the greater number of credits.

The Warden then reviewed Mr. Richardson's earned credit history, illustrating the application of this policy. With one exception, the Warden claims the ODOC gave Mr. Richardson earned credits equal to or greater than he could have earned even if he had

7

been assigned to the highest classification level under the current system. For the period from January 2014 through June 2014, the Warden admits Mr. Richardson's credits, if calculated at level 4, would have been 86 credits higher than the amount the ODOC allocated to him for this period. But the Warden claimed Mr. Richardson has now been awarded additional credits to bring Mr. Richardson's credits to the amount he could have earned, if classified at level 4. The Warden states that Mr. Richardson was assigned to an Oklahoma Correctional Industries (OCI) job in July 2014 "and has earned in excess of 44 earned credits every month since." Accordingly, the Warden contends Mr. Richardson has not been disadvantaged and that his ex post facto claim fails.

In reply, Mr. Richardson takes issue with the assertion he has not been disadvantaged. Although Mr. Richardson concedes the ODOC has now awarded him the greater of the credits available under the two systems, he argues the ODOC's refusal to advance him to level 3 or 4 based on the 1975 escape charge will leave him greatly disadvantaged "if he is fired from his prison OCI Job."

## II.   ANALYSIS

A law does not implicate the ex post facto clause unless it is both applied retrospectively and disadvantages the offender "by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). Where the retroactive application of a prison policy does not actually increase the punishment for the crime, it does not give rise to an ex post facto claim. *See California Dep't of Corr. v. Morales,* 514 U.S. 499, 512 (1995) (holding that policy change decreasing frequency of parole hearings did not implicate the ex post facto clause

8

because there was "no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement").

Although Mr. Richardson raises the speculative possibility that he will be disadvantaged in the future, he concedes that the ODOC has thus far awarded him credits in a manner that affords him the greater of the credits available under the two systems. *See id.* at 509 ("The amendment creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause."). Thus, he fails to allege that his sentence has been effectively lengthened.[3]

Where Mr. Richardson does not claim to be presently disadvantaged, he cannot establish a violation of the constitutional protection against ex post facto laws. *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995) (rejecting prisoner's claim that disciplinary action resulting in segregated confinement violated his due process rights where it did not "inevitably affect the duration of his sentence"); *Clifton v. Oklahoma*, 117 F. App'x 667, 669 (10th Cir. 2004) (unpublished opinion) (holding there was no ex post facto violation where an inmate was classified as a level 2 offender on the basis of a 1984 escape conviction because the inmate could not show that his sentence was effectively

---

[3] Because Mr. Richardson has raised only an ex post facto claim, we express no opinion on the due process implications of the ODOC's policies. *See infra.,* note 2.

9

lengthened due to application of the classification system or 1997 Amendment).[4]

Although future events may result in a disadvantage to Mr. Richardson as a result of the

retroactive application of the ODOC policy, at this time his ex post facto claim fails.

### III. CONCLUSION

For the foregoing reasons, we DENY Mr. Richardson's 28 U.S.C. § 2241 habeas

petition and AFFIRM the decision of the district court, albeit on other grounds.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[4] Although not binding, we find unpublished decisions from this court to be persuasive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").